THE CHICAGO BOARD OF EDUCATION, Plaintiff-Appellee, v. CHICAGO TEACHERS UNION *et al.*, Defendants-Appellants.

First District (1st Division) No. 85—2636

Opinion filed March 31, 1986.

Neil F. Hartigan, Attorney General, of Springfield (Grace Allen Newton, Assistant Attorney General, of Chicago, of counsel), for appellant Illinois Educational Labor Relations Board.

DeJong, Poltrock & Giampietro, of Chicago (Kathrin A. Koenig, of counsel), for other appellants.

Patricia J. Whitten, of Chicago (John L. Wren, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County in an action to vacate an arbitration award. The order stayed an unfair labor practice proceeding before the Illinois Educational Labor Relations Board (IELRB). That proceeding had been instituted because of a refusal by plaintiff board of education (the board) to comply with the arbitration award. At issue is whether the circuit court of Cook County had jurisdiction under the Uniform Arbitration Act (Ill. Rev. Stat. 1983, ch. 10, pars. 101 through 123) to take such an action in light of the Illinois Educational Labor Relations Act (IELRA) (Ill. Rev. Stat., 1984 Supp., ch. 48, pars. 1701 through 1721). We hold that it did not.

At all times relevant to this appeal, a collective bargaining agreement existed between the board and defendant, the Chicago Teachers Union (the union). The collective bargaining agreement contained a grievance procedure which provided for binding arbitration. In 1982, a dispute arose between the board and the union regarding alleged salary overpayments made to various assistant principals. When the

board attempted to recoup the alleged overpayments, the union filed a grievance against the board on behalf of certain assistant principals who are codefendants in this action and are hereinafter referred to as grievants. The matter eventually went to arbitration. On December 18, 1984, the arbitrator found in favor of the union and against the board, stating that the payments to grievants were not overpayments of salary and ordering the board to pay back the money it had previously collected from the grievants.

On February 15, 1985, the board filed an action in the circuit court of Cook County against the union and grievants, seeking to vacate the arbitration award under section 12 of the Uniform Arbitration Act (Ill. Rev. Stat. 1983, ch. 10, par. 112). The board alleged that the arbitrator had exceeded his authority in making the award and that it was contrary to law. The defendants filed a motion to dismiss for lack of jurisdiction, a motion to dismiss on the merits, and a motion to compel payment of the arbitration award.

Four days later, the union went before the Illinois Educational Labor Relations Board (IELRB), alleging that the board had committed unfair labor practices by refusing to bargain in good faith and refusing to comply with the arbitration award in contravention of sections 14(a)(5) and 14(a)(8) of the Illinois Educational Labor Relations Act (Ill. Rev. Stat., 1984 Supp., ch. 48, pars. 1714(a)(5), 1714(a)(8)). The IELRB subsequently issued a complaint of unfair labor practices and set the matter for a hearing.

One day before the scheduled hearing of the IELRB, the board made a motion in the circuit court of Cook County to stay the IELRB proceedings. On August 12, 1985, the circuit court ordered the proceedings of the IELRB stayed pending the court's decision. The circuit court's order also denied defendants' motions to dismiss for lack of jurisdiction and for failure to state a cause of action, but the court took defendants' motion to compel compliance with the arbitration award under advisement. Later, the IELRB was granted leave to intervene as a defendant in the present action. Defendants filed an interlocutory appeal from the circuit court's order staying proceedings of the IELRB and denying their motion to dismiss. We reverse.

■■ The principal issue before us is whether the circuit court of Cook County had jurisdiction, in an action to vacate an arbitration award under the Uniform Arbitration Act (Ill. Rev. Stat. 1983, ch. 10, pars. 101 through 123), to stay the IELRB from proceeding on unfair labor practice charges. The board apparently does not contest the IELRB's jurisdiction to hear the unfair labor practice charges. It merely maintains that the circuit court had jurisdiction under the Uni-

form Arbitration Act to vacate the arbitration award in question. We do not agree.

Under the Uniform Arbitration Act and the common law, courts are empowered to vacate certain arbitration awards. (Ill. Rev. Stat. 1983, ch. 10, par. 112; *Chicago Board of Education v. Chicago Teachers Union, Local No. 1* (1981), 86 Ill. 2d 469, 474, 427 N.E.2d 1199.) Prior to the enactment of the IELRA, courts consistently vacated arbitration awards involving public education employees and employers. See *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1976), 62 Ill. 2d 470, 343 N.E.2d 473; *Board of Education v. Murphy* (1978), 56 Ill. App. 3d 981, 372 N.E.2d 899, *appeal denied* (1978), 71 Ill. 2d 602.

In 1983, the Illinois legislature enacted the IELRA, which took effect on January 1, 1984. The IELRA was enacted at approximately the same time as the Illinois Public Labor Relations Act (IPLRA) (Ill. Rev. Stat., 1984 Supp., ch. 48, pars. 1601 through 1627), which took effect July 1, 1984. As initially passed by the legislature, the IPLRA's coverage included public education. The Governor exercised his amendatory veto powers to delete public education from the IPLRA and approved the IELRA with certain modifications. (Malin, *Implementing the Illinois Educational Labor Relations Act*, 61 Chi.-Kent L. Rev. 101, 102 (1985).) Together, the IELRA and the IPLRA establish a comprehensive regulatory scheme for public sector collective bargaining in Illinois.

There are strong indications in the IELRA's legislative history that court's were not intended to have jurisdiction under the Uniform Arbitration Act to vacate arbitration awards arising out of collective bargaining agreements in public education. The IPLRA, which was a companion piece of legislation to the IELRA, expressly provides that arbitration awards under its coverage are enforceable in accordance with the Uniform Arbitration Act. (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1608.) No such provision is contained in the IELRA. Had the legislature intended to incorporate the provisions of the Uniform Arbitration Act into the IELRA, it could have used express language to that effect as it did in the IPLRA. The fact that the legislature did not do so indicates that arbitration awards in public education were not intended to be reviewable by the circuit court under the Uniform Arbitration Act.

Rather than incorporating the Arbitration Act into the IELRA, the legislature established a new and different statutory framework to deal with this area because it recognized that:

"*** substantial differences exist between education employees

and other public employees as a result of the uniqueness of the educational work calendar and educational work duties and the traditional and historical patterns of collective bargaining between educational employers and educational employees and that such differences demand statutory regulations of collective bargaining between educational employers and educational employees in a manner that recognizes these differences." (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1701.)

Having determined that "[u]nresolved disputes between educational employees and their employers are injurious to the public," the legislature established procedures for resolving labor disputes in public education that included mandatory bargaining and mediation. (Ill. Rev. Stat., 1984 Supp., ch. 48, pars. 1710(a), 1712.) The IELRA mandates binding arbitration of unresolved disputes (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1710(c)) and creates a new unfair labor practice for refusal to comply with the provisions of a binding arbitration award. Ill. Rev. Stat., 1984 Supp., ch. 48, pars. 1714(a)(8), 1714(b)(6).

The IELRA's legislative history is silent concerning this unfair labor practice, and the IPLRA does not contain a similar provision. (Malin, *Implementing the Illinois Educational Labor Relations Act,* 61 Chi.-Kent L. Rev. 101 (1985); Whiteside, Vogt & Scott, *Illinois Public Labor Relations Laws: A Commentary & Analysis,* 60 Chi.-Kent L. Rev. 883, 921 (1984).) However, refusal to comply with a binding arbitration award triggers the unfair labor practice procedures set forth in the IELRA and allows a charging party to apply directly to the IELRB for relief. (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1715.) Judicial review of IELRB decisions is "taken directly to the appellate court of the judicial district in which the [IELRB] maintains its principal office." Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1716(a).

The effect of these provisions and the lack of any provisions making arbitration awards interpreting collective bargaining agreements negotiated under the IELRA reviewable or enforceable by the courts under the Uniform Arbitration Act indicate that the legislature intended that these arbitration awards should be reviewable or enforceable by the IELRB. By making it an unfair labor practice to refuse to comply with a binding arbitration award, creating the IELRB to enforce these provisions and providing for judicial review by a single appellate court, the legislature expressed a consistent intent not to be bound by past results, but to establish a new regulatory scheme to administer arbitration awards in the unique area of public education.

Placing jurisdiction to initially review educational arbitration

awards with the IELRB would allow the IELRB to fully develop the factual context surrounding the alleged unfair labor practice, thereby utilizing the IELRB's expertise to the fullest extent and lessening the need for judicial intervention. Moreover, the Act's policy of promoting labor tranquility in public education would be furthered by the IELRB's expeditious and uniform resolution of disputes regarding educational arbitration awards, and by the development of the IELRB's administrative expertise in this area. These benefits would be lost if educational arbitration awards were initially reviewed by the courts rather than by the IELRB.

■■ The board also argues that the IELRB has jurisdiction to review only the lack of compliance with the arbitration award, and the circuit court is the appropriate forum to determine the validity of the arbitration award itself. We do not agree. Under the board's analysis, there would be no need to institute unfair labor practice charges under sections 14(a)(8) or 14(b)(6) if an action could be filed in the circuit court to vacate the award. Once the court in an action to vacate an award determines that the award is enforceable it can compel compliance with the award through its contempt powers, thus eliminating the need for further recourse to the IELRB. On the other hand, if the court finds that the award is invalid, it could vacate the award and the IELRB would be left with no award to review. Clearly, the board's proposed method of reviewing educational arbitration awards renders the unfair labor practice procedures of sections 14(a)(8) and 14(b)(6) superfluous. We must interpret the provisions of the IELRA in a manner which will given them effect, not render them meaningless. (*Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 388-89, 415 N.E.2d 1034, *cert. denied* (1981), 451 U.S. 921, 68 L. Ed. 2d 312, 101 S. Ct. 2000.) Consequently, we reject the board's arguments concerning the scope of the IELRB's jurisdiction to review educational arbitration awards.

Because the circuit court's order stayed the proceedings of the IELRB, we cannot and do not consider the extent to which the IELRB may determine the propriety of an arbitration award. It is for the courts exercising their power of judicial review to keep the IELRB within its jurisdiction. (See *Ragano v. Civil Service Com.* (1980), 80 Ill. App. 3d 523, 527, 400 N.E.2d 97; *Graves v. Illinois Liquor Control Com.* (1977), 55 Ill. App. 3d 888, 891, 371 N.E.2d 368.) We merely hold that a court asked to vacate an arbitration award within the purview of the IELRA under the Uniform Arbitration Act must defer to the IELRB upon the agency's consideration of whether the failure to comply with the award is an unfair labor practice. Con-

sequently, the circuit court's order staying proceedings before the IELRB and denying defendants' motion to dismiss for lack of jurisdiction is reversed and the cause is remanded with directions to grant defendants' motion to dismiss.

Reversed and remanded with directions.

BUCKLEY, P.J., and QUINLAN, J., concur.